UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BRIAN E. JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 3:19-cv-01160 |
| | ) |
| MIKE DOBBINS, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Brian Johnson brought this seven-count action against various officials and entities associated with the Williamson County Jail, alleging constitutional and statutory violations arising from a fifteen-month placement in solitary confinement. Pending before the Court are three, fully briefed motions to dismiss: (1) one by Defendants Dobbins, Long, Rhoades, Vandenbosch, and Youker ("the County Defendants") regarding Plaintiff's § 1983 claims against them in their individual capacities (Doc. Nos. 63, 64, 67, 68); (2) one by Defendant Southern Health Partners ("SHP") regarding Plaintiff's Americans with Disabilities Act (ADA) claim against it (Doc. Nos. 70, 71, 76, 82); and (3) one by Defendants Dean and Sidberry regarding Plaintiff's ADA claims against them in their individual capacities (Doc. Nos. 78, 79, 80, 83). For the following reasons, the County Defendants' Motion to Dismiss (Doc. No. 63) will be granted in part and denied in part; and SHP's Motion to Dismiss (Doc. No. 70) and Dean and Sidberry's Motion to Dismiss (Doc. No. 78) will be granted.

## I. FACTUAL BACKGROUND[1]

Plaintiff, a former inmate at the Williamson County Criminal Justice Center (WCCJC), alleges that Defendants violated his constitutional and statutory rights by subjecting him to fifteen months in solitary confinement[2] for 23 hours a day with little to no opportunity for time outside his cell, either for recreation or human interaction. (Am. Compl. ¶¶ 54, 58–59, 80). He alleges that Defendants improperly placed him in solitary confinement without having a penological justification for doing so. (Id. ¶ 206). He further alleges that WCCJC refused to allow him to live with the general prison population, despite his repeated requests, because a brace that he wore on his right arm for a long-standing medical condition contained Velcro, a prohibited material. (Id. ¶¶ 25, 48, 80). According to Plaintiff, WCCJC had a common practice of improperly placing disabled inmates in solitary confinement, (id. ¶ 54), and that his placement there caused him to suffer from various mental and emotional conditions, including: "PTSD, ADHD, nightmares, hypervigilance, lack of sleep, fear, anxiety, depression, lack of focus, lack of ability to interact with others, an inability to leave his house, and other severe consequences." (Id. ¶ 210).

On December 26, 2019, Plaintiff filed a Complaint (which has since been amended by the operative Amended Complaint) asserting seven claims against WCCJC-related personnel and entities who allegedly were instrumental in the decision to keep him confined. (Id. ¶¶ 5–12). These include: (1) Captain Mike Dobbins, WCCJC Administrator; (2) Dusty Rhoades, Williamson County Sheriff; (3) Jeff Long, Commissioner of Safety and former Williamson County Sheriff; (4)

---

[1] The relevant background and facts necessary to resolve the pending motions to dismiss are drawn from the Amended Complaint (Doc. No. 62) ("Am. Compl.") and are accepted as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018).

[2] Plaintiff uses the term "solitary confinement," while the County Defendants use the term "segregated housing." (See Doc. No. 64 at 1) The Court will employ Plaintiff's term throughout but recognizes there is a dispute as to the terminology.

Dan Vandenbosch, former WCCJC Lieutenant; (5) Chad Youker, current WCCJC Lieutenant and former Staff Sergeant; (6) Charles Sidberry, WCCJC Medical Director; (7) James Dean, WCCJC physician; and (8) Southern Health Partners, a private medical provider contracted by WCCJC. (Id.). Plaintiff sued Dobbins, Rhoades, Long, Vandenbosch, and Youker in both their official and individual capacities. (Id.).

The Amended Complaint asserts the following seven claims: (1) violation of the Eighth Amendment against all Defendants under 42 U.S.C. § 1983 (Count I); (2) violation of the ADA against all Defendants (Count II); (3) violation of Procedural Due Process in violation of the Fifth and Fourteenth Amendments under § 1983 against all Defendants in their individual capacities (Count III); (4) violation of Substantive Due Process in violation of the Fifth and Fourteenth Amendments under § 1983 against all Defendants (Count IV); (5) Failure to Intervene under § 1983 against Defendants Vandenbosch and Youker in their individual capacities (Count V); (6) Supervisory Liability under § 1983 against Defendants Dobbins, Rhoades, and Long in their individual capacities (Count VI); and (7) medical malpractice, in violation of Tenn. Ann. Code § 29-26-121, against SHP and Defendants Sidberry and Dean in their individual capacities (Count VII). The County Defendants, SHP, Dean, and Sidberry have now moved to dismiss several of these claims under Federal Rule of Civil Procedure 12(b)(6). (See Doc. Nos. 63, 70, 78).

**II.    LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), "the complaint must include a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Ryan v. Blackwell, 979 F.3d 519, 524 (6th Cir. 2020) (quoting Fed. R. Civ. P. 8(a)(2)). When determining whether the complaint meets this standard, the Court must accept all of the complaint's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum,

3

903 F.3d 575, 581 (6th Cir. 2018); see also Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). Moreover, the Court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232 (1974)). But "[w]hile the complaint 'does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.'" Blackwell, 979 F.3d at 524 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

### III. MOTION TO DISMISS INDIVIDUAL CAPACITY CLAIMS BY COUNTY DEFENDANTS DOBBINS, LONG, RHOADES, VANDENBOSCH, AND YOUKER

As an initial matter, Plaintiff concedes that his ADA claims cannot survive against the County Defendants in their individual capacities. (Doc. No. 67 at 4). The Court agrees because the ADA does not "provide for suit against . . . a public official in his individual capacity." Vick v. Core Civic, 329 F. Supp. 3d 426, 441 (M.D. Tenn. 2018) (citing Everson v. Leis, 556 F.3d 484, 501 n. 7 (6th Cir. 2009)). Accordingly, to the extent Plaintiff's ADA claim (Count II) is directed at the County Defendants in their individual capacities, the claim will be dismissed.[3] And because Plaintiff also states that he will no longer pursue a Substantive Due Process claim "against the individual defendants," (Doc. No. 67 at 7 n. 1), his Substantive Due Process claim (Count IV) will also be dismissed.

As to the remaining claims in dispute, the County Defendants argue that Counts I and III should be dismissed because they are time-barred and improperly brought against them in their

---

[3] As the Sixth Circuit has recently clarified, "the proper defendant under a Title II [ADA] claim is the public entity or an official acting in [his or her] official capacity. . . ." Qiu v. Univ. of Cincinnati, 803 F. App'x 831, 837 (6th Cir. 2020).

4

individual capacities.[4] (Doc. No. 64 at 4). Plaintiff counters that the continuing violation doctrine excepts his claims from the relevant statute of limitations. The Court will examine the timeliness and merits of each claim in turn.

### A. Timeliness

The County Defendants argue that Plaintiff's § 1983 claims under the Eighth and Fourteenth Amendments are time-barred. (See Doc. No. 64 at 5). Section 1983 provides "a cause of action against any person who, under color of state law, deprives an individual of any right, privilege, or immunity secured by the Constitution and federal law." McKnight v. Rees, 88 F.3d 417, 419 (6th Cir. 1996). The statute of limitations for such claims is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claims arises." Eidson v. Tenn. Dep't of Children's Servs., 510 F.3d 631, 634 (6th Cir. 2007). The relevant statute of limitations period in Tennessee is one year. See Tenn. Code Ann. § 23-3-104(a); see also Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015). Generally, "[i]n determining when the cause of action accrues in § 1983 cases, [the court] look[s] to the event that should have alerted the typical lay person to protect his or her rights." Trzebuckowski v. City of Cleveland, 319 F.3d 853, 856 (6th Cir. 2003); see also Kuhnle Bros., Inc. v. Cty. Of Geauga, 103 F.3d 516, 520 (6th Cir. 1997) (internal quotations and citations omitted).

With these legal principles in mind, the Court now turns to the timeliness of Plaintiff's Eighth and Fourteenth Amendment claims. The Court will address the claims together because they incorporate the same arguments. (See Doc. Nos. 64 at 7, 67 at 5, 7).

---

[4] "It is well settled that 'neither a State nor its officials acting in their official capacities are 'persons' under § 1983.'" Haddad v. Gregg, 910 F.3d 237, 243 (6th Cir. 2018) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)). Therefore, Plaintiff may only bring Counts I, III, IV, V, and VI against Defendants in their individual capacities.

5

The County Defendants argue that Plaintiff's Eighth and Fourteenth Amendment claims are time-barred because he has not alleged that the County Defendants committed any unconstitutional acts within one year of December 26, 2019, the date Plaintiff filed the original complaint. (Doc. No. 64 at 6). For example, the County Defendants argue that Plaintiff's only allegation relevant to this claim is that his requests to change his housing assignment from solitary confinement went unheeded for more than a year, starting in December *2017*. (See Doc. No. 1 ¶ 80) (emphasis added). The County Defendants further argue that even if Plaintiff had alleged a different date, he has made only conclusory allegations that his requests for a housing change were denied. (Doc. No. 68 at 1–2).

Plaintiff counters he has alleged enough facts to make out a continuing violation of his Eighth and Fourteenth Amendment rights, thereby excepting his claims from the relevant one-year statute of limitations. (Doc. No. 67 at 4–5). In particular, he argues that various prison guards not in this litigation approached Defendants Youker and Vandenbosch "to request that Johnson be removed from solitary confinement," and that those requests were denied. (Doc. No. 67 at 5; see also Am. Compl. ¶ 81). Plaintiff also argues that because Youker and Vandenbosch continuously interviewed him and nonetheless denied his requests for different housing, "each such action would constitute a new limitations period upon which suit could be brought, rendering Johnson's claims . . . timely at least from December 26, 2018." (Doc. No. 67 at 7).

Under the continuing violation doctrine, "[w]hen the conduct that gave rise to a lawsuit straddles the limitations period—falling both outside of and within it—a plaintiff may be able to pull untimely claims into the period of viability by showing a continuing violation." Bey v. Lyons, No. 3:17-cv-01068, 2018 U.S. Dist. LEXIS 164191, at *7 (M.D. Tenn. Aug. 15, 2018) (citing Bowerman v. Int'l Union, 646 F.3d 360, 366 (6th Cir. 2011)). Courts employ a three-step inquiry

when analyzing the continuing violation doctrine. "First the defendant's wrongful conduct must continue after the precipitating event that began the pattern . . . . Second, injury to the plaintiff must continue to accrue after that event. Finally, further injury to the plaintiff[] must have been avoidable if the defendants had at any time ceased their wrongful conduct." Eidson, 510 F.3d at 634; see also Tolbert v. Ohio DOT, 172 F.3d 934, 940 (6th Cir. 1999). Courts have applied the continuing violation doctrine to § 1983 cases. See Nat'l Parks Conservation Ass'n v. TVA, 480 F.3d 410, 416–17 (6th Cir. 2007) (collecting cases and citing Tolbert, 172 F.3d at 934).

Having reviewed the Amended Complaint in the light most favorable to Plaintiff, the Court concludes that Plaintiff has adequately alleged a continuing violation at this stage of the litigation. First, Plaintiff plausibly alleges that the County Defendants' wrongful conduct continued well after his placement in solitary confinement. See Eidson, 510 F.3d at 634; see also Am. Compl. ¶¶ 90–125, 131–137). Specifically, Plaintiff alleges that he was placed in solitary confinement, despite being a non-violent drug offender, because of a soft brace on his arm. (Id. ¶¶ 25, 27, 48, 80). He also alleges that "some of the guards believed that [he] should be removed from solitary confinement, and proposed such to their supervisors," but that the County Defendants rebuffed those requests." (Id. ¶¶ 81). And Plaintiff further alleges that during his time in solitary confinement, he submitted a medical request to be moved from solitary confinement because "he did not know how much longer he could stand" it. (Id. ¶¶ 82, 85). His requests, however, went unheeded for more than a year. (Id. ¶ 89). Moreover, the County Defendants, many of whom were either in charge of the decision to keep him confined, were aware of his confinement, his requests to be moved and refused to take action despite his requests. (See id. ¶¶ 90–125, 131–137).

Affording Plaintiff's allegations a liberal reading, as required, and the reasonable and logical inferences from such a liberal reading of the court finds that they are sufficient to plausibly

7

infer that the County Defendants' wrongful conduct continued to occur well within the limitation period. In short, Plaintiff alleges more than a mere one-time violation of his rights. See Baker v. Sanford, 484 F. App'x 291, 293 (11th Cir. 2018) (finding the denial of requested medical care to be a continuous injury); see also Hutchinson v. Cunningham, No. 2:17-cv-185-WKW-GMB, 2018 U.S. Dist. LEXIS 11509, at *28–30 (M.D. Ala. Jan. 23, 2018) (collecting cases). Moreover, Plaintiff adequately alleges that his injuries continued to accrue after the precipitating event because he notified the County Defendants and medical staff of his deteriorating mental condition. (See Am. Compl. ¶¶ 82, 89; see also Eidson, 510 F.3d at 634). And it's plausible that had the County Defendants heeded Plaintiffs' repeated requests, that the accrual of his injuries—particularly his mental anguish—would have ceased. See Tolbert, 172 F.3d at 940. Accordingly, the Court finds that Plaintiff's Eighth and Fourteenth Amendment claims are not barred by the statute of limitations at this stage because Plaintiff adequately alleges a continuing violation.

B. Merits

The Court next turns to the merits of each of the remaining claims against the County Defendants in their individual capacities.

1. Eighth and Fourteenth Amendment Claims[5]

The County Defendants argue that they are subject to qualified immunity on Plaintiff's Eighth and Fourteenth Amendment claims. (Doc. No. 64 at 11). But as an initial matter, the Court finds that such claims would best be addressed at the summary judgment stage. See Marvaso v. Sanchez, 971 F.3d 599, 605–06 (6th Cir. 2020) ("[T]his Court generally denies qualified immunity at the motion to dismiss stage in order for the case to proceed to discovery, so long as the plaintiff

---

[5] Again, the Court will address Plaintiff's Eighth and Fourteenth Amendment claims together, especially at this early stage of the litigation, because the County Defendants' qualified immunity defenses to each claim, and Plaintiff's rebuttals thereto, rest on the same arguments.

8

states a plausible claim for relief"; see also Wesley v. Campbell, 779 F.3d 421, 433–34 (6th Cir. 2015) ("[I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity"); Grose v. Caruso, 284 F. App'x 279, 283 (6th Cir. 2008) ("Where, as here, the standard for a 12(b)(6) motion is whether allegations, if taken as true, could state a claim upon which relief may be granted, dismissal of Appellants on the basis of qualified immunity is premature.").

In any event, Plaintiff may meet the "low bar" required for defeating the County Defendants' qualified immunity defenses on his Eighth and Fourteenth Amendment claims at the motion to dismiss stage. Marvaso, 971 F.3d at 605. "To survive a motion to dismiss on qualified-immunity grounds, the plaintiff must allege facts that 'plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." Courtright, 839 F.3d at 518 (citing Johnson v. Moseley, 790 F.3d 649, 653 (6th Cir. 2015)).

Here, Plaintiff alleges that the County Defendants violated clearly established law by placing him in solitary confinement without justification. (Doc. No. 67 at 10). In the Sixth Circuit, "[i]t is generally recognized that a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees." Patterson v. Mintzes, 717 F.2d 284, 289 (6th Cir. 1983); see also Kizer v. Robertson Cty., No. 3:17-0715, 2018 U.S. Dist. LEXIS 79218, at *14 (M.D. Tenn. Apr. 16, 2018). And the Sixth Circuit has also recognized that a prisoner has a Fourteenth Amendment liberty interest, guarded by due process, against "atypical and significant hardship." Williams v. Lindamood, 526 F. App'x 559, 562 (6th Cir. 2013) (citing Harden-Bey v. Rutter, 524 F.3d 789, 792 (6th Cir. 2008)). Moreover, courts have

9

found such hardship in lengthy, involuntary confinement as "unusual and substantial in relation to the ordinary incidents of prison life." See id. at 793 (collecting cases) (internal citations omitted).

Here, Plaintiff plausibly alleges that the County Defendants placed him in solitary confinement for 23 hours a day inside his cell and only one hour outside his cell without penological justification for fifteen months. (Am. Compl. ¶ 54). Plaintiff also alleges that the lone hour outside of his cell did not include recreation time, outdoor activity, or social interaction with other inmates. (Id. ¶ 65). Moreover, given that Plaintiff alleges that the County Defendants were aware of his placement in solitary confinement without a penological justification, the Court may reasonably infer that the County Defendants "would have known [their] conduct violated [Plaintiff's] right[s]." Courtright, 839 F.3d at 518 (citing Johnson, 790 F.3d at 653). Accordingly, having reviewed the Amended Complaint's factual allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has pled enough facts at this early stage of the litigation to defeat the County Defendants' qualified immunity defense to his Eighth and Fourteenth Amendment claims. See Warren v. Metro. Gov't of Nashville, No. 3:14-CV-2373, at *14–15 (M.D. Tenn. May 27, 2015) (allowing § 1983 claims to survive a motion to dismiss because Plaintiff plausibly alleged the claims and "is entitled to offer evidence to support" them); see also Grose, 284 F. App'x at 284 (denying review of whether law was clearly established because it was "a fact-specific inquiry . . . ill-suited for" the court's review).[6]

---

[6] The Court also notes that Plaintiff's allegations are sufficient for the Court to infer a properly pled Eighth Amendment violation based on its legal elements. "To make out a claim under the Eighth Amendment, the prisoner must satisfy both an objective and a subjective component." Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (internal citations omitted). "The objective component requires the pain inflicted to be 'sufficiently serious.'" Curtin, 631 F.3d at 383, while the subjective component "requires that the prison official act with a 'sufficiently culpable state of mind.'" Rafferty v. Trumbull Cty., 915 F.3d 1087, 1094 (6th Cir. 2019) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Here, the Amended Complaint's factual

10

Case 3:19-cv-01160 Document 91 Filed 06/17/21 Page 10 of 15 PageID #: 1614

2. Failure to Intervene

Plaintiff argues that Defendants Youker and Vandenbosch failed to intervene in stopping the continued violation of his constitutional rights. (See Am. Compl. ¶ 227). The County Defendants respond that the claim fails to state a claim upon which relief can be granted. (Doc. No. 64 at 22).

Although failure to intervene claims are often limited to excessive force cases, the Sixth Circuit has applied the law of such claims to other § 1983 contexts. See Virgil v. City of Newport, No. 16-224-DLB-CJS, 2018 WL 344986, at *12 (E.D. Ky. Jan. 9, 2018) (collecting cases). To establish a failure to intervene claim under § 1983, Plaintiff must show that Youker and Vandenbosch "(1) observed or had reason to know that [constitutional harm] would be or was [taking place], and (2) ha[d] both the opportunity and the means to prevent the harm from occurring." Sheffey v. City of Covington, 564 F. App'x 783, 793 (6th Cir. 2014) (internal citations and quotations omitted). But liability only extends to those who had "a realistic opportunity to intervene and prevent harm." Wells v. City of Dearborn Heights, 538 F. App'x 631, 640 (6th Cir. 2013) (citing Ontha v. Rutherford Cty., Tenn., 222 F. App'x 498, 507 (6th Cir. 2007)).

Here, the Amended Complaint's factual allegations, when viewed in the light most favorable to Plaintiff, state a plausible failure to intervene claim against Youker and Vandenbosch. Plaintiff alleges that Youker and Vandenbosch "failed to take any reasonable steps to intervene or stop the ongoing violation of [his] rights, such as reporting the violation to superiors or securing reasonable accommodations for [him]." (Am. Compl. ¶ 227). He further alleges that because Youker had approved Plaintiff's transfer to a medical housing unit in March 2019, he could have

---

allegations, when taken in the light most favorable to Plaintiff, plausibly allege such an Eighth Amendment violation.

done so at an earlier juncture. (Id.). And Plaintiff alleges that Youker and Vandenbosch were continuously aware of Plaintiff's placement and rebuffed his requests for a housing change. (Am. Compl. ¶¶ 81, 131–133, 137). These allegations plausibly allege that Youker and Vandenbosch "had a realistic opportunity to intervene and prevent" Plaintiff's ongoing mental anguish. Wells v. City of Dearborn Heights, 538 F. App'x at 640 (internal citations omitted). Accordingly, the County Defendants' motion to dismiss Count V will be denied.

3. Supervisory Liability Claims

The County Defendants' argument that Plaintiff's supervisory liability claim fails to state a claim against Defendants Dobbins, Rhoades, and Long in their individual capacities is similarly unavailing. (See Doc. No. 64 at 24). In the Sixth Circuit, § 1983 liability "must be based on more than respondeat superior, or the right to control employees." Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (citing Hays v. Jefferson Cty., Ky., 668 F.2d 869, 874 (6th Cir. 1982)). "Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." (Id.) (internal quotations and citations omitted). A Plaintiff must at least show that the supervising official "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." (Id.).

Here, the County Defendants argue that Plaintiff makes nothing more than naked assertions and conclusory allegations that Dobbins, Rhoades, and Long "failed to take reasonable steps to stop the ongoing violation of [Plaintiff's] rights." (Am. Compl. ¶ 230). Plaintiff counters that the County Defendants were personally involved and liable "in the violation of Johnson's rights sufficiently enough to state a cause of action against" them. (Doc. No. 67 at 21). According to Plaintiff, Dobbins, Rhoades, and Long were "responsible for creating, developing, implementing and/or enforcing the rules, regulations, and policies with respect to placing inmates like [him] in

12

solitary confinement." (Id. (citing Am. Compl. ¶¶ 90–91)). Plaintiff also alleges that the three were responsible for ensuring the health and wellbeing of Plaintiff and oversaw the placement of individuals within the jail, including reviewing transfer requests, such as Plaintiff's. (Id.).

Having reviewed the Amended Complaint in the light most favorable to Plaintiff, the Court concludes that Plaintiff has plausibly alleged a supervisory liability claim. Plaintiff alleges that Dobbins, Rhoades, and Long, in their supervisory roles, "condoned all formal, informal, or other policies that directly caused the violations of [Plaintiff's] rights." (Id. ¶ 230). Moreover, all three were allegedly aware of Plaintiff's placement in solitary confinement. (Id.). These allegations allow the Court to plausibly infer a supervisory liability claim against the County Defendants, such that they "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending [parties]." Shehee, 199 F.3d at 300 (internal citations omitted). Accordingly, Defendant's motion to dismiss Plaintiff's supervisory liability claim (Count VI) will denied.

## IV. MOTION TO DISMISS BY DEFENDANT SOUTHERN HEALTH PARTNERS

Plaintiff also asserts a claim against Defendant Southern Health Partners ("SHP") for violation of the ADA. (See Am. Compl. ¶¶ 213–219). SHP is "the private correctional medicine corporation contracted by Williamson County Jail for the provision of medical care to inmates housed within the Jail." (Doc. No. 71 at 2). SHP argues that the ADA does not contemplate a claim against a private health care provider. (Doc. No. 70 at 1).

The Court agrees with SHP. A private entity cannot be held liable for ADA violations. See Vick v. Core Civic, 329 F. Supp. 3d 426, 441–42 (M.D. Tenn. 2018) (collecting cases); see also Pritchard v. Sheppard, No. 3:19-cv-186-TAV-HBG, 2020 WL 4003971, at *2 (E.D. Tenn. July 15, 2020). And the Court is not persuaded by Plaintiff's argument that under Sixth Circuit law, SHP should be deemed a public entity because it contracted with a state or local government. (See

13

Doc. No. 76 at 4). Indeed, Plaintiff also concedes that Sixth Circuit law precludes liability under the ADA for private contractors to state prisons. (See Doc. No. 76 at 3); see also Tarvin v. Lindamood, No. 1:18-cv-00025, 2019 WL 8016715, at *13 (M.D. Tenn. Sep. 23, 2019), report and recommendation adopted, No. 1:18-cv-00025, 2020 WL 487130 (M.D. Tenn. Jan. 30, 2020). Plaintiff nonetheless attempts to argue that the Court should depart from that authority by pointing to non-binding law in other district courts. (See Doc. No. 76 at 3–4). The court declines to do so here. See Cochran v. Trans-General Life Ins. Co., 60 F. Supp. 2d 693,698 (E.D. Mich. 1999) (noting that "[i]t is a well-settled rule that a district court is bound by the decisions of the circuit court of appeals in which it sits").

Accordingly, Plaintiff's ADA claim (Count II) against SHP will be dismissed.

## V. MOTION TO DISMISS BY DEFENDANTS DEAN AND SIDBERRY

Dean and Sidberry argue that, as discussed in Section III *supra*, Plaintiff cannot bring an ADA claim against them in their individual capacities. (See Doc. No. 78 at 1). Plaintiff does not oppose Dean and Sidberry's Motion to Dismiss. (Doc. No. 80 at 1). Accordingly, Plaintiff's ADA claims (Count II) against Dean and Sidberry, to the extent that claim is directed to them in their individual capacities, will be dismissed.

## VI. CONCLUSION

For the foregoing reasons, the County Defendants' Motion to Dismiss Individual Capacity Claims (Doc. No. 63) will be granted as to Counts II and IV to the extent those claims are directed toward the County Defendants in their individual capacities; SHP's Motion to Dismiss (Doc. No. 70) will be granted as to Count II; and Dean and Sidberry's Motion to Dismiss (Doc. No. 78) will be granted as to Count II to the extent that claim is directed against them in their individual capacities. The remaining claims will proceed, including Counts I, III, V, and VI as against the

County Defendants in their individual capacities; Count II, to the extent it is directed toward WCJCC as a public entity or the County Defendants in their official capacities; and Count VII.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE